UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER MARCUS, et al., | : | |
|     Plaintiffs, | : | CIVIL ACTION NO. |
| v. | : | 3:07-cv-1687 (JCH) |
| | : | |
| AMERICAN CONTRACT BRIDGE LEAGUE, | : | |
|     Defendant. | : | JUNE 20, 2008 |

**RULING RE DEFENDANT'S MOTIONS TO DISMISS AND TRANSFER VENUE**
**[Doc. No. 9]**

The plaintiffs, Peter Marcus and Susan Patricelli, bring this action against the defendant, the American Contract Bridge League (the "ACBL"), asserting causes of action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and specifically the collective action provision of the FLSA, 29 U.S.C. §216 (b), to remedy the defendant's alleged violations of the wage-and-hour provision of the FLSA. The ACBL now moves under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406 to dismiss the Complaint on the ground that the venue is improper, and moves, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404. For the following reasons, ACBL's Motion to Dismiss and, in the alternative, Transfer Venue is DENIED.

**I. BACKGROUND**

Plaintiffs are both residents of Connecticut. ACBL is a New York Corporation with its principal place of business in Memphis, Tennessee. ACBL headquarters are also in Memphis, where it employs seventy-five people in sixteen administrative divisions. ACBL sanctions and supervises bridge tournaments throughout the United States, Canada, Bermuda, and Mexico. At the time the Complaint was filed, ACBL employed one hundred and forty four tournament directors. Tournament Directors are

responsible for observing all play, maintaining records, and resolving disputes between players according to rules promulgated by ACBL. The ACBL hosts three national tournaments each year . Additionally, throughout the year, local organizations hire ACBL directors to officiate regional and sectional tournaments through the ACBL. Those local organizations then remit payment, for the directors' services, to ACBL headquarters in Tennessee.

ACBL hired Marcus as a Tournament Director in 1980, and he is still employed by them. Marcus resides in Bolton, Connecticut.[1] Until September 2007, Marcus served as the Head Tournament Director for District 25, the New England District of the ACBL, which includes Connecticut. From 2005 through 2007, the relevant period in this case, Marcus acted as Tournament Director in thirty-seven ACBL tournaments, of which approximately five were in Connecticut. All of the work performed by Marcus has taken place at tournaments. He has only been to Tennessee in a few instances when he acted as Tournament Director for tournaments held in that state.

Patricelli was employed as a Tournament Director from 1992 until her retirement in July 2007. During the relevant time period, 2005-2007, Ms. Patricelli acted as a Tournament Director at approximately fifty-four ACBL tournaments, seventeen of which took place in Connecticut. Additionally, Ms. Patricelli served as Tournament Director for eight, week-long StaC tournaments played in Connecticut, New Jersey, and New York.

---

[1] The Complaint states that Marcus resides in Connecticut. The court notes that the Affidavit of Barbara Varner, Director of Internal Operations at the ACBL, indicates that although Marcus does have a residence in Connecticut, the information in his file at ACBL indicates that his primary residence is in London, United Kingdom. Varner also states that the file indicates that Marcus has spent a considerable amount of time residing in Dallas, Texas where his wife was employed. However, when a court relies on pleadings and affidavits, as it does here, it will construe the affidavits in the light most favorable to the plaintiff. DiStefano v. Carozzi N. America, Inc., 286 F.3d 81, 84 (2d Cir. 2001). Thus, the court views Marcus as a resident of Connecticut.

For these tournaments, the directors are not required to be present; as a result, Ms. Patricelli conducted this work from her home in Connecticut via telephone and email.

Both plaintiffs claim that the ACBL failed to pay them overtime wages for hours worked in excess of forty hours per week. They seek to recover the unpaid wages along with liquidated damages, attorneys fees, and injunctive relief pursuant to the FLSA.

## II. DISCUSSION

A. Motion to Dismiss

The same standard of review is applied to a motion to dismiss for improper venue under Fed R. Civ. P. 12(b)(3) as is applied to dismissals for lack of personal jurisdiction pursuant to Fed R. Civ. P 12(b)(2). Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). When responding to a Rule 12(b)(2) motion, a plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Distefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001)(citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodrigues, 171 F.3d 779, 784 (2d Cir. 1999)). When the court relies on the pleadings and affidavits, the plaintiff must "make a prima facie showing that the court possesses personal jurisdiction over the defendant." Id.

The civil venue statute, 28 U.S.C. § 1391(b) and (c), provides in pertinent part:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

(c) For purposes of venue under this chapter, a defendant that is a corporation

> shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Thus, plaintiffs correctly state that, in a federal FLSA overtime wages case where the defendant is a corporation, Connecticut is the proper venue if (1) a substantial part of the events or omissions giving rise to this claim occurred in Connecticut, or (2) the ACBL is subject to personal jurisdiction in Connecticut.

Starting with 28 U.S.C. § 1391 (b), the plaintiffs claim that a substantial part of the events or omissions giving rise to their claim occurred in Connecticut. This "civil venue statute permits venue in multiple judicial districts as long as a 'substantial part' of the underlying events took place in those districts." Gulf Ins. Co., 417 F.3d at 356. Thus, venue can be proper in more than one district, and the court is not required to determine the best venue. Bates v. C&S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992). However, the Second Circuit cautions that "it would be error . . . to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." Gulf Ins. Co., 417 F.3d at 357.

Plaintiffs argue that they performed work in Connecticut, among other places, for which they should have been paid overtime wages. The work in Connecticut was substantial and material to their FLSA claim because during the relevant time period both plaintiffs, as part of their employment with ACBL, acted as Tournament Directors at ACBL tournaments in Connecticut, among other places. During the relevant time period, Patricelli, for example, acted as a Tournament Director at approximately fifty-

four non-StaC ACBL Tournaments, of which approximately seventeen were in Connecticut.[2]  In the same time period, Marcus served as a Tournament Director at approximately thirty-seven ACBL tournaments, of which five were in Connecticut.[3]  The Complaint alleges breach of an employment agreement and noncompliance with the Fair Labor Standards Act for overtime hours worked.  Pursuant to their employment with ACBL, plaintiffs worked in Connecticut and various other states.  Some of those hours worked have gone unpaid, according to the plaintiffs.  As such, Connecticut is one place where substantial and material events giving rise to this claim occurred.  Thus, venue is properly established pursuant to 28 U.S.C. §1391 (b)(2).

Plaintiffs also claim they have jurisdiction over the defendant pursuant to 28 U.S.C. §1391(c), which requires that the court have personal jurisdiction over the defendant.  In both a diversity action and a federal question case involving a defendant residing outside the forum state, as is the case here, personal jurisdiction over a defendant is determined by the law of the forum in which the court sits, i.e., Connecticut.  Cutco Industries v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); PDK Labs, Inc. V. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).   Connecticut law requires a two-step analysis.  "First, the court must determine if the state's long-arm statute reaches the foreign corporation. Second, if the statute does reach the [defendant], then the court must decide whether that exercise of jurisdiction offends due process." Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 81 (2d Cir.1995).

---

[2]The defendant's Motion indicates that only fifteen of these tournaments overseen by Patricelli were in Connecticut.  However, the court views the evidence in the light most favorable to the plaintiffs and thus, considers it as eighteen tournaments in Connecticut.  See DiStefano, 286 F.3d at 84.

[3]Again, the facts here are slightly disputed, but the court will accept the plaintiffs' affidavits as true for the purpose of this ruling.

Connecticut's long arm statute governing jurisdiction over foreign corporations, Conn. Gen. Stat. § 33-929, provides, in relevant part:

> (f) Every foreign corporation shall be subject to suit in this state by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state . . . .

As long as the contract in question clearly contemplates and requires performance in Connecticut, the long arm statute reaches the defendant corporation. Johnson, Fretty & Co., v. Lands South, LLC., 526 F.Supp.2d 307, 312 (D. Conn. 2007)(citing numerous cases in the District and Connecticut Superior Courts so holding).[4]

Plaintiffs argue that they have an employment contract with ACBL and that contract required them to perform their work as Tournament Directors in Connecticut, among other places. The court finds that because ACBL is a national organization, in that it holds tournaments across the United States and thus employs Tournament Directors to work in those various locations, the contract clearly contemplated that plaintiffs would perform their work, at least in part, in Connecticut. Further, ACBL did in fact assign both plaintiffs to work in Connecticut. The plaintiffs have worked for ACBL for a combined total of 52 years. The employment contract giving rise to this claim clearly contemplated performance in Connecticut. Accordingly, the court finds that the plaintiffs established a prima facie showing under the Connecticut long arm statute that the contract was meant to be performed in this state.

---

[4]Defendant states that the employment relationship should contemplate or require *full* performance in Connecticut but the case law does not support this position. Motion to Dismiss (Doc. No. 9) at 5.

Having established that the long arm statute supports personal jurisdiction, the court must then address whether jurisdiction over the defendant violates due process. To subject a foreign defendant to jurisdiction, due process requires that it have "certain minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Johnson, Fretty & Co, LLC,, 526 F.Supp.3d at 313 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The crucial question is whether the defendant "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that [the defendant] should reasonably anticipate being haled into court there." Best Van Lines, inc. v. Walker, 490 F.3d 239, 242-43 (2d Cir. 2007)(quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

The court finds that jurisdiction over the defendant does not offend due process. The ACBL satisfies the minimum contacts standard because it is a national corporation that deliberately holds and sanctions bridge tournaments in many states, including Connecticut. In fact, there was a regional tournament held in Cromwell, Connecticut in February of this year. This tournament was a week long and involved over one thousand bridge players and eight Tournament Directors. This event is typical for ACBL. Further, because the plaintiffs have worked for ACBL for so long, and both have residences in Connecticut, it was reasonable to expect that they would perform their obligations in Connecticut, especially because the ACBL assigned them to work there. Thus, based on these contacts, the court finds that the defendants could reasonably have been expected to be haled into a Connecticut court.

B. Motion to Transfer Venue

In the alternative, defendant moves to transfer the case to Tennessee pursuant to 28 U.S.C.§1404 (a), which authorizes transfer when more than one jurisdiction is proper. The party moving for the transfer has the burden of establishing that its choice of venue is more appropriate. H.Lewis Packaging, LLC., v. Spectrum Plastics Inc., 296 F. Supp. 2d 234, 241 (D. Conn. 2003)(citing Ford Motor Co. V. Ryan, 182 F.2d 329, 330 (2d Cir. 1950)). In considering a motion to transfer, the court can consider several factors including: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006)( citing Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). Further, the plaintiff's choice of forum should be given great weight. Id.

ACBL requests that the matter be transferred because the proximity of witnesses, availability of process to compel the appearance of witnesses, and convenience of the parties and witnesses make Tennessee a more appropriate venue for this matter. The court is inclined to deny the motion to transfer based on its consideration of the factors cited in D.H. Blair &Co and the defendant's inability to carry its burden.

First, the plaintiffs' choice of forum should be given great weight. Second, both plaintiffs and the defendant claim inconvenience as a consequence of having to litigate in the opponent's choice of venue. The convenience of the witnesses does not weigh

in favor of either party because there are witnesses in both Connecticut and Tennessee. Likewise the court finds that the location of the relevant documents is a non-issue in today's world because copy machines, electronic discovery, and emails make it much easier to obtain documents at a distance. Connecticut also seems more favorable with respect to the operative facts because most are in Connecticut or the surrounding areas where the plaintiffs mostly worked. Defendant argues that Tennessee is more convenient because of the availability of process, but most of the witnesses in Tennessee are ACBL employees making it unlikely that the witnesses will not cooperate to attend trial in Connecticut. Finally, the court is persuaded by the plaintiffs' argument that it would be more of a financial hardship on them to litigate this matter in Tennessee than it would be for ACBL to litigate the case in Connecticut. ACBL is a national business whose officers regularly travel across the country and beyond to conduct their work; thus, they are more equipped to travel for this matter. In all, defendant has not convinced the court that Tennessee is a more convenient forum for this matter and denies its Motion to Transfer.

## III. CONCLUSION

For the forgoing reasons, ACBL's Motion to Dismiss for Improper Venue is DENIED. Additionally, ACBL's Motion in the Alternative to Transfer Venue is also DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of June, 2008.

                                        /s/ Janet C. Hall
                                    Janet C. Hall
                                    United States District Judge