UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| PETER MARCUS, et al., | : | |
|---|---|---|
| Plaintiffs, | : | CIVIL ACTION NO. |
| v. | : | 3:07-cv-1687 (JCH) |
| | : | |
| AMERICAN CONTRACT BRIDGE LEAGUE, | : | |
| Defendant. | : | NOVEMBER 10, 2008 |

**RULING RE PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF AN FLSA CLASS [Doc. No. 24]**

**I.  INTRODUCTION**

The plaintiffs, Peter Marcus and Susan Patricelli, bring this action against the defendant, the American Contract Bridge League (the "ACBL"), asserting causes of action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") to remedy the defendant's alleged violations of the wage-and-hour provision of the FLSA.[1] Plaintiffs now move the court, pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b), to proceed as a collective action and to authorize the issuance of a notice of pendency and opt-in form to all potential class members.  The ACBL opposes the Motion on the ground that plaintiffs have failed to show that the proposed class members are similarly situated.  For the following reasons, Plaintiffs' Motion is GRANTED.

**II.  FACTS**

The ACBL sanctions and supervises bridge tournaments throughout the United States, Canada, Bermuda, and Mexico.  The ACBL conducts its business by employing

---

[1] Both plaintiffs claim that the ACBL failed to pay them overtime wages for hours worked in excess of forty hours per week.

1

Tournament Directors to officiate tournaments around the United States. Tournament directors are responsible for observing all play, maintaining records, and resolving disputes between players according to rules promulgated by ACBL. All Tournament Directors have the same primary job duties. See Marcus Aff. ¶ 12; Beye Aff. ¶ 3.[2]

Until June 2007, the ACBL classified all of its Tournament Directors as either part-time, extended part-time, full time, or salaried. From June 2007 until the present, the ACBL has classified its Tournament Directors as either salaried or part-time. Before the ACBL made this reclassification, it employed approximately 128 part-time, 9 extended part-time, 25 full time, and 17 salaried Tournament Directors. Marcus Aff. ¶ 15. Presently, the ACBL employs approximately 129 part-time and 43 salaried Tournament Directors. Id.

The reclassification affected compensation to Tournament Directors. According to the ACBL, prior to June 2007, most Tournament Directors were paid on a per session basis, which was determined by rank and seniority.[3] In June 2007, the ACBL revised its method of payment. As a result, all Tournament Directors who once worked as part-time or extended part-time employees are now paid by the hour and are eligible for overtime compensation. Additionally, Tournament Directors who worked as full-time employees are now paid a salary.

---

[2] Tournament Director responsibilities include, inter alia, following through on all player requests for information or services to achieve player satisfaction until all reasonable avenues have been exhausted; anticipating problems and needs, and offering services; and addressing player complaints. See Beye Aff. ¶ 3; Def.'s Exh. B (Tournament Director Job Description).

[3] The ACBL does not address its method for overtime compensation prior to June 2007. Instead, it indicates that prior to 2007, Tournament Directors were compensated per session with each session generally lasting 4.5 hours. Beye Aff. ¶ 7.

The ACBL hired Marcus as a Tournament Director in 1980, and he is still employed by them. From the time he was hired until about 1992, he was classified as an "independent contractor." After 1992, he was reclassified as an "employee." In the period from November 15, 2004, until the present, Marcus has been classified as a part-time or extended part-time Tournament Director.

Patricelli was employed as a Tournament Director from 1992 until her retirement in July 2007. In the period from November 15, 2004, until her retirement, Patricelli was classified as part-time or full-time.

Plaintiffs allege that at various times they worked in excess of forty hours in a week as Tournament Directors and were never paid the statutory time and a half overtime payment. They further allege that they frequently worked with other Tournament Directors whose worked also exceeded forty hours per week, and who also did not receive overtime pay.

## III. DISCUSSION

The FLSA permits employees to file an action on behalf of themselves, as well as on behalf of "other employees similarly situated," for violations of minimum wage and overtime provisions of the FLSA. 29 U.S.C. § 216 (b). "[S]uch a joint, or collective, action requires potential plaintiffs to opt in to the suit in order to benefit from any judgment." Neary v. Metropolitan Property and Casualty Insurance Co., 517 F. Supp. 2d 606, 618 (D. Conn. 2007)(citing 29 U.S.C § 216(b)).

"It is well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to [section] 216(b) of the FLSA." Holbrook v. Smith and Hawken, Ltd., 246 F.R.D. 103,

3

105 (D. Conn. 2007)(quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). However, the Second Circuit has not articulated a test for certification of an FLSA class action. See, e.g., Mike v. Safeco Insurance Co. of America, 374 F. Supp. 2d 216, 220 n.6 (D. Conn. 2003). District courts in this circuit undertake a two-stage inquiry. See, e.g., Neary, 517 F.Supp.2d at 618. The first step in determining whether a suit pursuant to the FLSA may proceed as a collective action is for the court to determine whether the proposed class members are similarly situated. Id. If the court finds the proposed members are similarly situated, then the class will be conditionally certified.[4] Id. The second step of the analysis "occurs upon completion of discovery." Id. "A court, often prompted by a motion for decertification by the defendant, will examine all the evidence then in the record to determine whether there is a sufficient basis to conclude that the proposed class members are similarly situated." Cuzco v. Orion Builders, Inc., 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007); see also Holbrook, 246 F.R.D at 105. The court's findings on the motion for decertification constitutes the second step in the two-part inquiry.

For the first step in the inquiry, before discovery is conducted, "a class representative has only a 'minimal burden to show that he is similarly situated to the potential class,' which requires 'a modest factual showing sufficient to demonstrate'" that they and the potential class members together "were victims of a common policy or plan that violated the law." Neary, 517 F.Supp.2d at 618 (quoting Cuzco, 477

---

[4] For the first step of the inquiry, courts often "rely exclusively on pleadings and affidavits . . . because this review is often completed before the beginning of discovery." Cuzco v. Orion Builders, Inc., 477 F.Supp.2d 628, 632 n.3 (S.D.N.Y. 2007). Because discovery has just begun here, the court will consider the pleadings and affidavits submitted by the parties in making its first step finding.

4

F.Supp.2d at 632); see also Mendoza v. Casa De Cambio Delgago, Inc., 2008 U.S. Dist. Lexis 27519 *4 (S.D.N.Y. April 7, 2008). In order for plaintiffs to meet this modest burden of proof, the court need only "be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case." Mike, 274 F.Supp.2d at 220. However, the court need not judge the merits of plaintiffs' claims because they are irrelevant to the conditional class certification inquiry, as long as plaintiff asserts a plausible basis for the claim. Holbrook, 246 F.R.D at105-6.

In this case, the ACBL contends that plaintiffs have not met their modest burden. The ACBL argues that, while the plaintiffs were both Tournament Directors, all Tournament Directors do not have the same job responsibilities. More specifically, it asserts that some Tournament Directors have duties and responsibilities other than, and in addition to, the duties required of the plaintiffs. For instance, according to the ACBL, certain Tournament Directors are charged with maintaining or carrying supplies and are paid additional compensation as a result. Beye Aff. ¶ 4. Other Tournament Directors can be "Directors-in-Charge" or one of eight "Field Supervisors." Id. at ¶ 5, 9. Because these positions encompass additional job responsibilities and compensation, ACBL argues that the plaintiffs cannot be similarly situated to the class they seek to represent.

While the plaintiffs have not advanced an abundance of evidence in support of their Motion, the court does not find it is insufficient--especially in light of the fact that discovery is not yet complete--to meet the "modest" showing required to overcome the first step of the class certification inquiry. Plaintiffs submitted affidavits that stated their

5

belief that, based on their extensive years and experience with the ACBL, the potential class members (other Tournament Directors) are similarly situated to them because they held the same or a similar position to them and had the same or similar responsibilities.

The ACBL claims that certain Tournament Directors have more responsibilities than others and thus, the plaintiffs are asking the court to certify a class made up of individuals with different jobs and responsibilities. This could very well be true. However, the exact nature and scope of these different positions are unknown at this point, but they should be revealed by the end of discovery. These differences may or may not bear on the determination of whether the plaintiffs are similarly situated to the potential class members. See Neary, 517 F.Supp.2d at 623 ("Any categorical differences in job positions/duties can be explored on discovery and provide a basis for de-certification or class limitation motion by defendant after discovery has concluded."). Furthermore, at this point, "[t]he court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." Holbrook, 246 F.R.D. at 106. Thus, now is not the time for the court to determine if the potential class is perfectly uniform; rather, it need only determine if the plaintiffs made "a modest factual showing" sufficient to show they were subjected to the same policy denying them overtime wages. See id. at 622.

Defendant also asserts that plaintiffs have not provided evidence of a "common thread binding their proposed class of employees." Def.'s Mem. in Opp. at 14. As a result, it argues, the court would have to engage in an ad hoc inquiry for each proposed plaintiff to determine if they are similarly situated. Id. However, while ACBL introduced

different categories of Tournament Directors, it appears they each have the same baseline responsibilities. See Def.'s Exh. B. Further, Tournament Directors can occasionally be Directors-in-Charge or have the responsibility of maintaining the supplies. For instance, Marcus and Patricelli occasionally played the role of Director-in-Charge, see Beye Aff. ¶ 13, at certain tournaments. Thus, ACBL's assertion that they would not be similarly situated to Tournament Directors with added responsibility, such as Directors in Charge, fails.

ACBL relies on Mike v. Safeco Insurance Co., 274 F.Supp.2d 216 (D. Conn. 2003), in making its argument that proceeding with a collective action would require individual inquiry which would be too cumbersome for the court, and therefore, inappropriate. In Mike, Judge Sqautrito denied a Motion for Class Certification because it required determining whether the FLSA administrative exception applied to the plaintiff.[5] This inquiry would be "fact-intensive" because Mike, the representative plaintiff, "disavowed" the very job description that accompanied the job title he was seeking to use as a basis for potential plaintiffs. Id. at 221. Thus, the court would have to engage in individual inquiries in order to determine if each potential plaintiff possessed the same job responsibilities as Mike. Id. Unlike in Mike, here the plaintiffs embrace the job title of Tournament Director. While the defendants put forth some evidence that potential class members may possess additional job duties to those of the plaintiffs, there is not yet any evidence that these other duties do not similarly apply

---

[5] While the FLSA requires that employers pay employees who work in excess of forty hour per week at a rate not less than one and one-half times their regular rate, it does not apply to persons employed in an executive or administrative capacity. 29 U.S.C. § 213(a)(1).

7

to the plaintiffs. Furthermore, it appears from the affidavits that all Tournament Directors share the same baseline responsibilities. See Def.'s Exh. B. Thus, the court does not see any reason to deny class certification at this point, and reminds the defendant that it is able to bring a motion for decertification at the close of discovery.

ACBL argues, in the alternative, for the court to limit the potential class to part-time, extended part-time and full-time Tournament Directors between November 15, 2005 and June 11, 2007. First, it argues that because Marcus and Patricelli were never salaried employees they were not similarly situated with other Tournament Directors, Field Supervisors and Chief Tournament Directors who were paid a salary. The court agrees that these salaried employees would not be similarly situated to the plaintiffs. Thus, salaried Tournament Directors will not to be included in the class.

With respect to the time period for certification, the plaintiffs wish to include those Tournament Directors that have worked from November 15, 2004 until the present. However, the ACBL requests the court to limit the period beginning on November 15, 2005, because the plaintiffs allegations as to wilfulness are "conclusory" and therefore do not justify a three year limitation period pursuant to 29 U.S.C §255.[6] Def.'s Brief at n.3. However, the court does not agree that the allegations in the Complaint are conclusory. To prove willfulness, the plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S.

---

[6] Under the FLSA, a three-year statute of limitations applies to claims arising from willful violations of the statute; all other causes of action arising under the FLSA must be commenced within two years from the date of accrual. 29 U.S.C. § 255(a).

8

128, 133 (1988). Paragraph 18 of the Complaint states that the ACBL's head of human resources "told Marcus that . . . the ACBL had previously been found to violate overtime laws with respect to failing to pay overtime to office staff." The court finds that this factual assertion is enough, at this stage of the litigation, to support the claim that defendant's conduct was willful.[7]

The ACBL also seeks to end the relevant time period on June 11, 2007, because it was at this time that the ACBL reclassified its employees and began paying overtime to part-time employees. As of June 11, 2007, the ACBL only employs salaried and part-time Tournament Directors. Thus, because the part-time Tournament Director are now being paid overtime, and salaried employees are not included in the class, the court will limit the period from November 15, 2004 until June 11, 2007.

## IV.   CONCLUSION

For the foregoing reasons, plaintiff's Motion for Conditional Certification (Doc. No. 24) is GRANTED. Plaintiffs are permitted to send a notice and consent documents to all non-salaried Tournament Directors of the ACBL from November 15, 2004, until June 11, 2007. The parties shall confer regarding the proper form of the notice to be sent to the potential plaintiffs, in light of this Ruling, and shall submit to the court their agreed-upon notice, or if no agreement, their respective proposed forms of notice by November 20, 2008.

---

[7] While it is true that a plaintiff has an obligation to provide the grounds of his entitlement to relief using "more than labels and conclusions." Bell Atlantic Corp. v. Twombly, _U.S. _, 127 S.Ct. 1955, 1964-5, what Twombly requires is not "a universal standard of heightened fact pleading," but rather "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 10th day of November, 2008.

                                         /s/ Janet C. Hall
                                         Janet C. Hall
                                         United States District Judge